IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Darren T. Cagle, | ) | Civil Action No. 9:09-cv-3250-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Through this action, Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is currently before the Court for review of the Report and Recommendation of Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. §636(b)(1)(B) and Local Rules 73.02(b)(2)(A) and 83.VII.02, et seq., D.S.C. The Magistrate Judge has recommended the Commissioner's decision be affirmed. The Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation and the Commissioner filed a reply. For reasons set forth below, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection has been made, and the Court may accept,

–1–

reject or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter to him with instructions. 28 U.S.C. §636(b)(1).

The role of the Federal Judiciary in the administrative scheme established by the Social Security Act ("Act") is a limited one. Section 205(g) of the Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...". 42 U.S.C. § 405(g). "Substantial evidence has been defined as more than a scintilla, but less than a preponderance." *Thomas v. Celebreeze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The Court must uphold the decision of the Commissioner so long as it is supported by substantial evidence and made in accordance with controlling law. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Commissioner's findings of fact are not binding if they are based on an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

It is well settled that a refusal to follow prescribed medical treatment without "justifiable cause" will preclude a finding of disability. 20 C.F.R. § 404.1530(b); *Dawkins v. Bowen*, 848 F. 2d 1211, 1213 (11th Cir. 1988). SSR 82-59 provides that "justifiable cause" exists where the "individual is unable to afford prescribed treatment which he or she is willing to accept, but which free community resources are unavailable." This Rule provides that "all possible resources", such as free clinics and public assistance agencies "must be explored" and the claimant's financial

–2–

circumstances must be documented." *Id.* Further, if affordable treatment is not available to the claimant, "the case will be referred to VR." *Id.*

A claimant may satisfy his burden of demonstrating disability under the Social Security Act in several ways, one of those by establishing that the claimant satisfies the criteria of one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. The listed impairments under Appendix 1 include disability arising from mental retardation, which sets forth four different methods to establish that the claimant has "significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the development period." *Id.* § 12.05. One of these methods allows the claimant to establish disability arising from mental retardation by showing an IQ between 60 and 70 and "a physical or other mental impairment imposing an additional and significant work related limitation of function." *Id.* §12.05(c). The presence of a significant work related limitation on function which renders the claimant unable to perform his past relevant work satisfies the "significant work related limitation" requirement of 12.05(c). *Rainey v. Heckler*, 770 F. 2d 408, 410-411 (4th Cir. 1985). A claimant seeking to satisfy the requirements of 12.05(c) must also demonstrate that he has deficits in "adaptive functioning." *Id.* §1200(a), 12.05. Deficits in "adaptive functioning" can include limitations in such areas as communication, self care, functional academic skills, home living, social/ interpersonal skills, use of community resources, self direction, work, leisure, health and safety. *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002).[1]

---

[1] The Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association (hereafter "DSM IV") defines mental retardation as a combination of "significantly subaverage intellectual functioning" and "significant limitations in adaptive functioning" in at least two skill areas. DSM IV at 39.

−3−

## BACKGROUND

The claimant, who was 41 years old at the time of the onset of his alleged disability in October 2005, was found by the ALJ to have "severe impairments" under the standards of 20 C.F.R. §§ 404.1521 and 416.921 in five separate areas: Crohn's Disease, depression, anti-social behavior, impulse control disorder and significantly subaverage intellectual functioning. (Tr. 12). The findings of significantly subaverage intellectual functioning and various psychiatric disorders were based, at least in part, upon the evaluation of a consulting clinical psychologist, Dr. Gene Sausser, Phd., whose diagnoses included "mild mental retardation"and "impulse control disorder". (Tr. 326, 384). Dr. Sausser's testing established a full scale IQ score of 66, which fell into the first percentile range, and reading and spelling skills that were on second and third grade levels. (Tr. 324-325). Dr. Sausser observed that Mr. Cagle's reading and spelling skills "are problematic in relationship to his ability to comprehend written instructions." (Tr. 325). He also commented that should Mr. Cagle be determined to be disabled, "it is felt that these [funds] would at best be managed by his mother." (Tr. 326).

Dr. Sausser's diagnosis of "impulse control disorder" was based upon clinical findings that Mr. Cagle has "a tendency to be enraged and display poor impulse control in situations that demand better reason and judgment than he has been capable of delivering." (Tr. 384). Dr. Sausser further observed that "[w]hen things go against him he does not understand he tends to get angry about them and act out with very poor impulse control." (*Id.*) DSM IV notes that persons with such impulse control disorders may experience "difficulties in interpersonal relations" and "job loss." DSM IV at 610.

The ALJ's found that Mr. Cagle's Crohn's Disease was a "severe impediment" which

–4–

prevented him from returning to his "past relevant work" as a bull dozer driver and shut down operator. (Tr. 12, 18). He further found that Mr. Cagle's history of hemorrhaging as a complication of his Crohn's Disease with heavy labor required that his work be restricted to "light work." (Tr. 17-18). The ALJ rejected the claimant's argument that his was fully disabled from the Crohn's Disease because there was considerable evidence in the record that Mr. Cagle's symptoms were reduced to a manageable level when he took his prescribed medications. (Tr. 16). The ALJ did note the uncontested testimony of Mr. Cagle that he had reduced and then discontinued his medications for Crohn's Disease because he did not have health insurance and could no longer afford the drugs. (Tr. 16).

Based upon the findings set forth above, the ALJ concluded that Mr. Cagle had failed to carry his burden of demonstrating that he was disabled under the Act. First, the ALJ concluded that Mr. Cagle had not established that he satisfied any of the listed impairments under 20 CFR 404, Subpart P, Appendix 1. In particular, the ALJ found that the claimant had not satisfied the requirements under 12.05(c) for mental retardation because he had shown "no evidence of deficits in adaptive functioning." (Tr. 14). The ALJ further found that "the claimant has no difficulties" in social functioning. (Tr. 14). Second, the ALJ found that Mr. Cagle's Crohn's Disease was not disabling because "medication...is effective in controlling his symptoms...". (Tr. 16).

## DISCUSSION

### A. The Listed Impairment for Mental Retardation

§ 12.05 sets forth four different methods to demonstrate mental retardation as a listed impairment, thereby establishing the claimant's disability. One of those methods, found at §12.05(c), allows a finding of disability with a full scale IQ of 60-70 and a "physical or other mental

impairment imposing an additional and significant work-related limitation on function." The Rule further provides that the subaverage intellectual functioning must be associated with "deficits in adaptive functioning...". §12.05. The uncontested testing of Dr. Sausser established Mr. Cagle's full scale IQ of 66, and the ALJ's finding that Mr. Cagle's Crohn's Disease disqualified him from his previous work satisfied the Rule's requirement for "an additional and significant work related limitation." *Rainey v. Heckler*, 770 F.2d at 410-411. Thus, the sole obstacle preventing Mr. Cagle from satisfying the requirements for mental retardation as a listed impairment is the alleged lack of any "deficits in adaptive functioning."

The ALJ found that "there is no evidence of deficits in adaptive functioning". (Tr. 14). This finding, however, is not supported by substantial evidence in the record before the Commissioner. First, Dr. Sausser made a specific diagnosis of "mild mental retardation", carrying the DSM IV diagnosis code of 317. (Tr. 333). A diagnosis of mental retardation under DSM IV is defined as "significantly subaverage general intellectual functioning...that is accompanied by significant limitations in adaptive functioning in at least two...skill areas...". DSM IV at 39. Thus, the very diagnosis of mental retardation by Dr. Sausser includes a finding of at least two deficits in adaptive functioning. Second, Dr. Sausser's finding of reading and spelling skills at second and third grade levels (Tr. 325) demonstrates a deficit in "functional academic skills", one of the "skill areas" under the DSM IV definition of mental retardation. DSM IV at 39. Third, Dr. Sausser's diagnosis of an "impulse control disorder" (Tr. 384) and the ALJ's finding that this condition was a "severe impairment" (Tr. 12), could support a potential finding of a deficit in "social/ interpersonal skills" and/or "self direction", both "skill areas" under the DSM IV definition of mental retardation. *Id.* Fourth, the evidence that Mr. Cagle could not balance a check book or pay his own bills (Tr. 208)

–6–

and Dr. Sausser's recommendation that should the claimant obtain benefits his mother should

manage his funds (Tr. 326) could support a potential finding of deficits in "self help" and "self

direction", two "skill areas" under the DSM IV definition of mental retardation. DSM IV at 39.

Therefore, in light of Dr. Sausser's unchallenged diagnosis of mental retardation and the

considerable independent evidence in the record of deficits in adaptive functioning set forth above,

the Court hereby reverses the decision of the Commissioner and remands the case for further action

not inconsistent with this decision.[2]

## B. Non-compliance Due to Alleged Inability to Afford Prescribed Treatment

The ALJ found that the symptoms associated with Mr. Cagle's Crohn's Disease markedly

worsened when he did not take his prescribed medications. (Tr. 16) There is substantial evidence in

the record which supports the ALJ's finding. (Tr. 276, 372, 393) Clearly, in the absence of some

"good reason" or justifiable cause" for non-compliance with prescribed medical treatment, Mr. Cagle

would be disqualified for disability benefits under the Act. 20 C.F.R. § 404.1530 (b); SSR 82-59;

*Dawkins v. Bowen,* 848 f.2d 1211, 1213 (11th Cir. 1988).

Mr. Cagle testified that he discontinued the medication prescribed to treat his Crohn's

Disease because of a financial inability to afford the medicine. (Tr. 37)[3] Mr. Cagle explained "my

daddy...helped me out until...last year and half, he got sick and done had six bypasses." *Id.* Mr.

---

[2] The ALJ is reminded that on remand it is not necessary for the claimant to establish that he
has deficits in every one of the 12 listed "skill areas" to satisfy the definition of mental retardation.
Indeed, the definition of mental retardation by both DSM IV and the American Association of
Mental Retardation requires only two areas of deficit be present. *Atkins v. Virginia,* 536 U.S. at 309
n.3 (2002); DSM IV at 39.

[3] Mr. Cagle's symptoms from poorly controlled Crohn's Disease included bloody diarrhea,
abdominal cramping, rectal bleeding, nausea and vomiting. (Tr. 310-313, 315, 336, 386-389)

Cagle further testified that the medicine cost more than $100 per bottle. (Tr. 38). He also testified that he had not been able to afford regular trips to his physician, noting "I didn't have the money." (Tr. 41). Entries in the records of his treating physicians mentioned Mr. Cagle's financial difficulties in affording medical treatment. (Tr. 310, 336, 394). The ALJ noted Mr. Cagle's testimony regarding his absence of health insurance but made no further findings regarding the claimant's financial ability to pay for the prescribed treatment. (Tr. 16).

The law in this circuit is that a "claimant may not be penalized for failing to seek treatment she cannot afford." *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986). As the Fourth Circuit noted in *Lovejoy*, "it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Id.* To address this situation, the Commissioner adopted SSR 82-59, which sets forth the procedure to be followed where a claimant has been non-compliant with prescribed treatment allegedly because of poverty. First, contact must be made to "all possible resources" to determine if affordable medication can be provided the patient. Second, "the claimant's financial circumstances must be documented." Third, "where treatment is not available, the case will be referred to VR." SSR 82-59.

The record contains no evidence of compliance with SSR 82-59. There is no documented evidence in the record indicating an effort to obtain the prescribed medicine for Mr. Cagle or any effort to document his actual financial condition. Further, there is no documented referral to VR. Consequently, the Court finds reversal and remand is necessary to allow the Commissioner to

–8–

comply with the requirements of SSR 82-59.[4]

## CONCLUSION

The Commissioner's decision is **REVERSED** and **REMANDED** to address the issue of

"deficits in adaptive functioning" under Listed Impairments, § 12.05, and to make appropriate

findings and take appropriate actions in accord with SSR 82-59.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 27, 2011
Charleston, South Carolina

---

[4] On remand, the ALJ should explore all reasons for Mr. Cagle's failure to comply with the prescribed medical regimen.    In addition to financial issues, evidence may reveal personal difficulties in managing prescription renewals, lack of understanding of the importance of continuing the medications when the symptoms abate and other factors which may be relevant to the issue of "deficits in adaptive functioning" under § 12.05.